UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

JASON WEBBY,

                          Plaintiff,

               - *against* -

FUTURE US, INC.,

                        Defendant.

-----------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, JASON WEBBY, ("Plaintiff") by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, and THE WASHINGTON LAW FIRM, PLLC, hereby complains of Defendant, FUTURE US, INC., ("Defendant") upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the **Age Discrimination in Employment Act of 1967**, as amended ("ADEA"), the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL") and seeks damages to redress the injuries Plaintiff suffered as a result of being **discriminated** against on the basis of his **age**.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 28 U.S.C. §§1331, 42 U.S.C. §2000e-5(f)(3), and 29 U.S.C. § 2617.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city laws pursuant to 28 U.S.C. §1367.

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5.   Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC"), more than sixty (60) days prior to the date of the filing of this Complaint, on August 15, 2022.

6.   Prior to the commencement of this action, Plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, in accordance with the New York City Administrative Code §8-502(c).

## PARTIES

7.   Plaintiff is 48 years-old and a resident of the State of Connecticut.

8.   Defendant is a foreign business corporation, incorporated under the laws of the State of California, with a principal place of business in the State of New York, County of New York.

9.   Defendant is an "employer" under the relevant statutes and employs more than twenty (20) employees.

10.  At all relevant times, Plaintiff was an employee of Defendant.

## MATERIAL FACTS

11.  On June 30, 2020, Defendant hired Plaintiff as the Vice President of Sales, North America East. At all relevant times, Plaintiff worked out of Defendant's New York City offices.

12.  As Vice President of Sales, Plaintiff led a ten-person remote team and managed the successful delivery of the East Coast, North America Direct-Sold, Programmatic, and

Mid-Market revenue targets. Plaintiff also constructed the East Coast budget for the 2021 fiscal year.

13.     Plaintiff immediately demonstrated measurable success. Specifically, Plaintiff led his team's successful delivery of over-target revenue and year-over-year growth for five consecutive quarters.

14.     As a result, Plaintiff's team achieved the record for the all-time greatest revenue for Future in North America. He closed the 2020 fiscal year with an increase of $5.7 million in final revenue from the 2019 final revenue. Within that year, Plaintiff added 28% more accounts and increased the average deal size by 180%.

15.     On July 19, 2021, in light of Plaintiff's exceptional performance, Defendant promoted him to Chief Revenue Officer, North America, with a corresponding increase in salary to $300,000, plus an on-target bonus of $150,000 and 25% of his salary paid out per annum if Profit Pool targets were hit. Defendant also increased Plaintiff's "VCP Award," which entitled him to a larger stock grant.

16.     As Chief Revenue Officer, Plaintiff managed the entire North American Business-to-Consumer sales team, consisting of eighteen sellers and two vice presidents; delivered monthly, quarterly, and annual revenue targets for the entire North American business; collaborated with the marketing and product teams to conduct training and manage deliverables; met weekly with the Chief Executive Officer and Chief Financial Officer to forecast revenue; created and delivered monthly and quarterly business review presentations to the Chief Executive Officer and Chief Financial Officer; oversaw the integration of new acquisitions into Defendant's North American commercial structure; and hosted a sales conference for the North American team.

17.    After Plaintiff's promotion to Chief Revenue Officer, he continued to exceed all expectations. Plaintiff oversaw new and existing major accounts including Hulu, Disney+, Universal Pictures, AMC Theaters, Synchrony Bank, Capital One, Ally Financial, JP Morgan Chase, Mercedes-Benz, HBO Max, and more. In March 2022, Plaintiff planned and hosted a sales conference for about one hundred and twenty employees, and subsequently received overwhelmingly positive feedback about the conference from management and attendees, including the Global Chief Revenue Officer and Chief Executive Officer.

18.    In April 2022, Hazel Boyle, Defendant's Chief People Officer, declared that Plaintiff, as the most senior New York employee, should hold ultimate authority in the New York office. Accordingly, Plaintiff's responsibilities expanded to include leading the New York Office Committee's bi-monthly meetings and working to create a strong community culture in the New York office.

19.    Plaintiff also handled feedback from New York employees about the office culture and managed an additional budget to fulfill his new responsibilities. Plaintiff always went above and beyond the scope of his role to benefit his team and Future as a whole.

20.    Defendant celebrated Plaintiff's accomplishments throughout his tenure. On August 28, 2020, after only two months with Defendant, it highlighted Plaintiff's success in a company-wide email. After this, Defendant continuously recognized Plaintiff's success by promoting interviews in which he participated, both on social media and within company emails. Specifically, Defendant promoted Plaintiff's interviews on or around June 2021; August 12, 2021; October 22, 2021; December 1, 2021; December 13, 2021; January 12, 2022; and May 24, 2022.

4

21.    Defendant never gave Plaintiff any reason to think that his performance was inadequate or that his employment was at risk. In contrast, Defendant gave every indication that Plaintiff was a stellar employee and that his future with Defendant was bright.

22.    Then, on June 16, 2022, after almost two years of measurable success and clear dedication, Defendant suddenly terminated Plaintiff's employment because of his age.

23.    At the time of his discharge, Plaintiff was the oldest member of Defendant's United States Commercial Leadership Team.

24.    Defendant informed Plaintiff that it was terminating his employment because of poor performance. However, this explanation is nothing more than mere pretext.

25.    Throughout his entire tenure with Defendant, Plaintiff did not receive a single negative performance evaluation. Rather, every piece of feedback that Plaintiff received was positive.

26.    Plaintiff consistently exceeded all expectations, including his most recent revenue target. For example, at the end of the first quarter of the 2022 fiscal year, Zack Sullivan, Global Chief Revenue Officer, told Plaintiff, "[i]t was a difficult quarter for the business and you did an amazing job pulling the team through it." Even through industry-wide challenges, Plaintiff's success never wavered and Defendant continued to praise his work. The following examples are indicative of Plaintiff's continued success with Defendant right up to his supposed termination for "poor performance:"

    a.    In the second quarter of 2022, Plaintiff exceeded his revenue generation goal, reaching 102% of his target.

    b.    During the third quarter of 2022, Plaintiff successfully managed an increased workload related to company restructuring and New York office community

culture initiatives.

    c.  On May 24, 2022, 2022, Defendant selected Plaintiff to serve as a brand ambassador for a podcast interview on Digiday, one of the most prominent trade brands in United States advertising.

27.    Even if Plaintiff's performance was not objectively positive, which it was, and somehow warranted discharge, which it did not, Defendant failed to follow its own standard disciplinary policies and procedures before terminating Plaintiff's employment.

28.    Defendant's policies and procedures address poor performance and disciplinary decision-making. Termination is never the first step when an employee performs poorly. According to its written policy, Defendant is first to implement a performance improvement process ("PIP") to support poorly performing employees before initiating a formal disciplinary process. Indeed, such a formal process is only started if absolutely necessary.

29.    Defendant's PIPs generally last between four and twelve weeks. First, a manager meets with a poorly performing employee to discuss specific concerns and create an individualized PIP. Then, to measure growth, the manager collects data on the employee's performance prior to and during the improvement process, regularly providing the employee with constructive feedback. Finally, the process continues "until either the colleague's performance improves to the required standard or each level of disciplinary sanction has been issued, up to and including dismissal."

30.    If the PIP fails, Defendant next initiates a formal disciplinary process. Pursuant to Defendant's policy, this process includes both an investigation and a hearing. The hearing then results in either an informal letter of concern or a formal "first written warning" with a deadline for improvement.

31.   If the employee's performance does not sufficiently improve by the set deadline, Defendant issues a "final written warning" with a new deadline. Defendant only terminates an employee for poor performance if the employee's performance does not improve by the "final written warning" deadline.

32.   Despite this standard policy, which is consistently and routinely applied to employees younger than Plaintiff, Defendant never initiated a PIP for Plaintiff, nor was any disciplinary process applied to Plaintiff. Unlike his younger counterparts, Plaintiff did not receive the benefit of an investigation, a hearing, or even a warning. In fact, Defendant never once informed Plaintiff that his performance was inadequate in any way prior to his termination.

33.   Defendant always applies its standard disciplinary policy and procedure to younger employees. During Plaintiff's employment, he witnessed Future notify three employees, all younger than him and two under 40, that they failed to meet expectations, both verbally and in writing. Defendant further documented that their performance was below that of their peers and issued them each detailed PIPs. Thus, giving them an opportunity to remain employed by Defendant, an opportunity never provided to Plaintiff.

34.   Moreover, Defendant never labels younger employees, who exceed their targets, poor performers. Indeed, Defendant fails to issue any disciplinary or corrective action regarding some younger employees who miss targets entirely.

35.   For example, Victoria Sanders ("Sanders"), who is in her early 30s, has failed to meet a single quarterly sales target in the current year and, as of Plaintiff's termination, was expected to fall below her year-to-date target by a staggering $3.8 million at the end of June 2022. Nevertheless, Future did not issue Sanders any discipline or place her on a PIP,

but instead gave Sanders a substantial pay raise.

36. In sum, Defendant's proffered explanation for Plaintiff's termination is a poorly conceived and thinly veiled attempt to mask age discrimination. While Defendant claims to have terminated Plaintiff, the oldest member of its United States Commercial Leadership Team, for poor performance, all objective measures demonstrated that his performance was outstanding.

37. Not only did Defendant terminate Plaintiff, but it expedited his termination, ignoring its own internal policies uniformly applied to its younger employees. Defendant held Plaintiff to a different, elevated, standard compared to his younger colleagues and terminated him for only one reason, his age.

38. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

39. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, long-term incentive shares, benefits, and other damages. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

40. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

41. As such, Plaintiff demands punitive damages against Defendant.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE ADEA

42. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43.    29 U.S.C. § 623(a) provides that it shall be unlawful employment practice for an

employer:

> [T]o . . . discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's age.
> [T]o limit, segregate, or classify his employees in any way which
> would deprive or tend to deprive any individual of employment
> opportunities or otherwise adversely affect his status as an
> employee, because of such individual's age….

44.    As described herein, Defendant discriminated against Plaintiff on the basis of his age, in

violation of ADEA, by subjecting him to disparate treatment and terminating his

employment.

45.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and

will continue to suffer lost wages, benefits, promotional opportunities, commissions and

bonuses and has incurred other damages as a result.

46.    Defendant's actions constitute a "willful violation" of the ADEA, as that term is used in

29 U.S.C. § 626(b), and Plaintiff is entitled to liquidated damages.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

47.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

48.    Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an
> employer or licensing agency, because of an individual's **age**,
> race, creed, color, national origin, sexual orientation, military
> status, sex, disability, predisposing genetic characteristics,
> familial status, marital status, or status as a victim of domestic
> violence, to refuse to hire or employ or to bar or to discharge
> from employment such individual or to discriminate against such
> individual in compensation or in terms, conditions or privileges
> of employment."

49.     As described herein, Defendant discriminated against Plaintiff on the basis of his age, in violation of NYSHRL, by subjecting him to disparate treatment and terminating his employment.

50.     As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

51.     As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

52.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

53.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54.     The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived **age**, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

55.     As described herein, Defendant discriminated against Plaintiff on the basis of his age, in violation of NYCHRL, by subjecting him to disparate treatment and terminating his employment.

56.     As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

57.     As a result of Defendant's unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

58.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## **JURY DEMAND**

59.     Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.      Declaring that Defendant engaged in unlawful employment practices prohibited by the ADEA, the NYSHRL, and the NYCHRL in that Defendant discriminated against Plaintiff on the basis of his age;

B.      Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.      Award Plaintiff liquidated damages pursuant to 29 U.S.C. §626(b);

D.      Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

G.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: Garden City, New York
       October 28, 2022

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                              By:       _____/s/_____
                                        Marjorie Mesidor
                                        *Attorneys for Plaintiff*
                                        585 Stewart Avenue, Suite 410
                                        Garden City, New York 11530
                                        (212) 248-7431

                                        **THE WASHINGTON LAW FIRM,**
                                        **PLLC**

                              By:       _____/s/_____
                                        Melissa Washington
                                        *Attorneys for Plaintiff*
                                        114 John Street, Suite 312
                                        New York, New York 10002
                                        (646) 770-3440